# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**-vs-**  Case No. 6:06-cr-120-Orl-31DAB

**BERNARD KENNETH JENNINGS JR.**

_____

## ORDER

Defendant, Bernard Kenneth Jennings Jr. ("Jennings"), filed a Motion to Suppress (Doc. 17) alleging that Officer Brian J. Cavanaugh ("Cavanaugh") of the Melbourne Police Department ("MPD") violated his Fourth Amendment rights when Cavanaugh detained him and searched his vehicle without a warrant, therefore rendering any evidence resulting from that search inadmissible against him. The Government filed a Response to Defendant's Motion (Doc. 22) and the Court held an evidentiary hearing on October 6, 2006.

### I. Background

Around noon on December 31, 2005, Cavanaugh and fellow MPD Officer James States ("States") received a report over their radio regarding a motorcycle accident in Melbourne, Florida. As the officers approached the scene of the accident, Cavanaugh saw a white truck leaving the area with an all-terrain vehicle ("ATV") in the bed. Cavanaugh asserts that at this point he noticed a crack in the windshield of the truck. In addition, Cavanaugh suspected that the truck's window tint was in violation of Florida Law.

Upon reaching the scene of the accident, Cavanaugh noticed that Officer Valerie Butler ("Butler") had already responded and secured the scene. Cavanaugh stopped at the scene and asked Butler if she needed assistance, however Butler indicated that she did not need any help. Even though Butler made no mention of an ATV, Cavanaugh suspected that the ATV in the white truck may have been involved in the accident. He turned his patrol car around and pursued the truck. Once Cavanaugh pulled the truck over, he approached the vehicle from behind. Cavanaugh's view of the interior of the vehicle was completely obstructed by the dark window tint. Cavanaugh knocked on the driver's side window of the car and when he did not receive a response, opened the driver's side door.

Cavanaugh spoke briefly with the driver of the truck, Jennings. Cavanaugh informed Jennings that he stopped him for the dark window tint, a cracked windshield and in the course of investigating an accident. Cavanaugh testified that, immediately thereafter, he smelled what he believed to be cannabis in its "natural form" emanating from the vehicle. After detecting this odor, Cavanaugh asked Jennings to step out of the car and speak with States at the back of the truck. During the suppression hearing, Cavanaugh explained that he was trained to smell marijuana in its natural form[1] but did not go into detail regarding the particulars of his training or the circumstances under which he would be able to detect the scent of marijuana.

After asking Jennings to step out of the car, Cavanaugh began to search the vehicle and found, in the center console, a small, plastic bag which contained a green, leafy substance that resembled

---

[1]When questioned by the Court, Cavanaugh testified that "raw" marijuana smells different from burning or burned marijuana and that the odor he detected from Defendant's truck was positively that of raw marijuana.

cannabis. Cavanaugh decided to detain Jennings until he could determine the nature of the substance. Once Jennings was in custody, Cavanaugh tested the leafy substance from the truck and determined it was in fact cannabis.[2] Later, another officer conducted a more thorough search of the vehicle and claimed to have found two marijuana cigars in the ashtray.[3]

As a result of these findings, Jennings was placed under arrest[4] and transported to Brevard County Detention Center.

## II. Legal Analysis

*A. The Stop*

The essential purpose of the Fourth Amendment is to "impose a standard of 'reasonableness' upon the exercise of discretion by Government officials" in an effort to "safeguard the privacy and security of individuals against arbitrary invasions." *Delaware v. Prouse,* 440 U.S. 648, 653 (1979) (internal citations omitted).

It is well settled that a law enforcement officer may stop a vehicle where the officer has probable cause to believe that a traffic violation has occurred. *United States v. Cooper,* 133 F.3d 1394, 1398 (11th Cir. 1998). In this case, Cavanaugh observed Jennings operating a vehicle with a cracked windshield and very dark window tinting. Under Florida law, both a crack in the windshield

---

[2] The plastic bag recovered from the center console of Jennings' vehicle contained approximately 6 grams of marijuana.

[3] This officer was not called to testify, so this information is hearsay. Since Cavanaugh did not see these cigars during his search, it is presumed that the ashtray was closed. Otherwise, they would have been in plain view and discovered by Cavanaugh.

[4] Upon a search incident to his arrest Jennings was also found to be in possession of crack cocaine.

that may obstruct a driver's view,[5] as well as window tinting that is too dark, are traffic violations. *See* Fla. Stat. §§ 316.2954, 316.610. Therefore, Cavanaugh had probable cause to believe that a traffic violation had occurred and the initial stop of Jennings' vehicle was reasonable under the Fourth Amendment.

   *B. The Search*

   The Fourth Amendment protection against unreasonable searches and seizures is preserved by the requirement that searches be conducted pursuant to a warrant. *California v. Carney,* 471 U.S. 386, 390 (1985). However, there are exceptions to this general rule. The search of an automobile has long been recognized as an exception to the warrant requirement. *Carroll v. U.S.*, 267 U.S. 132 (1925). The Supreme Court has articulated two reasons for the automobile exception: (1) ready mobility allowing a vehicle to be quickly moved, and (2) diminished expectation of privacy with respect to one's automobile. *Carney,* 471 U.S. at 390. However, a diminished expectation of privacy in one's automobile does not amount to no expectation of privacy whatsoever. In fact, in order to justify a warrantless search of a vehicle under the automobile exception, there must be probable cause to believe that the vehicle contains contraband. *U.S. v. Holland,* 740 F.2d 878, 879 (11th Cir. 1984).

   The Government has failed to demonstrate that Cavanaugh had probable cause to search Jennings' vehicle. The Government's contention that the search was reasonable is based solely on Cavanaugh's testimony that within a few seconds of standing outside the vehicle he could smell a small amount of cannabis which was sealed in a plastic bag several feet away in the center console. This unplausible scenario is without corroboration.

---

   [5]It is questionable whether the windshield crack was sufficient to actually obstruct the driver's view.

Although the Court has a poor sense of smell, it could not detect any odor emanating from the bag, even when held close.  Even Cavanaugh admitted in his testimony that he could detect no odor from the bag at the hearing, claiming that the conditions in the courtroom were not the same as those in the truck.[6]  This Court has never before encountered a "drug sniffing deputy."  Typically, specially trained dogs, not humans, are used to identify marijuana by scent alone.[7]

Taking into account Cavanaugh's admission that he could not smell the cannabis when presented to him in the courtroom, as well as the fact that only a small amount of cannabis in a sealed, plastic bag was recovered from the center console of the truck, the Government's uncorroborated contention that Cavanaugh smelled the cannabis from several feet away is not credible.  If the Government's offer of proof were sufficient, virtually any search that turned up cannabis could be justified based on an officer's subjective sense of smell.  Because the Government presented insufficient evidence to justify Cavanaugh's search of the vehicle, this warrantless search was unconstitutional.  Therefore, all items discovered as a result of that illegal search are inadmissible in a federal prosecution against Jennings.  *See Rios v. U.S.,* 364 U.S. 253, 255 (1960).

---

[6] During the hearing, the court suggested the possibility of conducting a double-blind study to see if Cavanaugh was capable of detecting the odor of marijuana contained in a sealed plastic bag from outside of a parked vehicle.  However, the Government declined this invitation suggesting that the conditions at the time of the search could not be sufficiently replicated.

[7] Dogs, for example, have a sense of smell which is greater than humans by a factor of 10,000. *See, e.g* Emma Ross, *Dogs Can Smell Cancer,* CBS News, Sept. 24, 2004, http://www.cbsnews.com/stories/2004/09/24/health/main645357.shtml

*C. The Arrest*

Jennings' arrest was a consequence of the unconstitutional search of his vehicle and is therefore also unconstitutional. *See Wong Sun v. United States,* 371 U.S. 471 (1963). As such, any evidence obtained from the search incident to that arrest must also be excluded from any criminal prosecution of Jennings. *See id.*

**III. Conclusion**

For the reasons stated herein, it is

**ORDERED** that Defendant's Motion to Suppress (Doc. 17) is **GRANTED.**

**DONE** and **ORDERED** in Chambers in Orlando, Florida on October 16, 2006.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Bernard Kenneth Jennings Jr.